# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ORA HARRIS-JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 11-1411-JWL** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) and Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's failure to follow the remand order of the District Court and in the ALJ's consideration of Plaintiff's somatoform disorder and conversion disorder, the court ORDERS that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I.      Background

This case has a long and tortuous history beginning when Plaintiff applied for SSI benefits on May 12, 1998.  (R. 67-69, 846).  Plaintiff's 1998 application was denied in an Administrative Law Judge (ALJ) hearing decision dated January 28, 2000 (R. 18, 846), and Plaintiff requested (R. 64), but was denied (R. 65-66) Appeals Council review of that decision.  Plaintiff did not file an appeal of that decision with the district court.  On November 15, 2002 Plaintiff filed an SSD application, and on November 21, 2002 filed another SSI application in both of which she alleged onset of disability beginning April 1, 2001.  (R. 846).[1]

After about six years of proceedings before the Social Security Administration, ALJ Robert J. Burbank issued a decision dated August 7, 2008 (R. 18-28) (hereinafter the 2008 decision), and Plaintiff in due course sought review in the district court.  See, Jackson v. Astrue, 09-cv-01008-SAC (Doc. 1) (Complaint) (D. Kan. Jan. 14, 2009).[2] After judicial review of the Commissioner's decision, the court issued a Memorandum

---

[1]Although the record does not contain the November 15, or November 21, 2002 applications, both Plaintiff (Pl. Br. 1-2), and the Commissioner (Comm'r Br. 1) admit that the applications were filed, and the record contains an "Abbreviated DIB Review Sheet" showing the application date and the date of onset alleged in each application.  (R. 846).

[2]In the proceedings leading to the 2008 decision, Plaintiff sought to reopen the May 12, 1998 SSI application.  (R. 18).  However, in that decision, the ALJ determined the prior application was not subject to reopening and constituted res judicata as to the period on and before January 28, 2000.  Id.  On remand from the district court, the Commissioner did not again address the issue of reopening, and Plaintiff does not argue before this court that the failure to do so was error.  Therefore, the court finds that the January 28, 2000 decision constitutes res judicata regarding disability on and before that date.

and Order and entered Judgment remanding the case pursuant to sentence four of 42
U.S.C. § 405(g) "for further proceedings consistent with this [(the)] memorandum and
order."  Id. (Doc. 18, p.24) (Doc. 19).[3]  In the Memorandum and Order, the court
recognized that the 2008 decision was made at step two of the Commissioner's sequential
evaluation process in which the ALJ determined that Plaintiff was not disabled because
her only medically determinable impairment, conversion disorder, was not a severe
impairment within the meaning of the Act.  (R. 791, 800).

The court found that in the 2008 decision the Commissioner erred in evaluating the
medical opinions of record and as a consequence erred in finding Plaintiff's conversion
disorder was not a severe impairment.  (R. 805-12).  The court found particular problems
with the ALJ's evaluation of a psychologist's, Dr. Moeller's, opinion and with the ALJ's
conclusion that Dr. Moeller's opinion related only to the then-current period and not to
any earlier period.  Id. at 805-08.  The court also noted that while the claimant's brief
before the ALJ (R. 11-14) laid out the diagnostic criteria for conversion disorder and cited
to incidents in the medical records consistent with those criteria, "the ALJ's review of the
medical evidence and evaluation of the plaintiff's credibility was done with little or no
attention given to how the diagnosed somatization disorder should affect or inform such a
review and evaluation."  (R. 810).  The court concluded its opinion, stating that it was

---

[3]Except for the last page of the Memorandum and Order, both the court's
Judgment and the Memorandum and Order appear in the administrative record in this
case.  (R. 789-812).  Therefore, all further citation in this opinion to Judge Crow's
decision will be to the administrative record.

reversing and remanding for "additional proceedings consistent with the above rulings."

It summarized:

> The ALJ shall go forward [on remand] with the sequential evaluation
> process from step two, shall recontact Dr. Moeller to request his opinions
> on the onset and severity of the plaintiff's somatoform disorder during the
> relevant time period, and shall review the evidence and plaintiff's credibility
> mindful of any applicable diagnosis of somatoform disorder.

(R. 812).

On October 21, 2010, the Appeals Council vacated the 2008 decision, and

remanded the case "for further administrative proceedings consistent with the order of the

court."  (R. 786).  On remand, the case was assigned to a different Judge, ALJ James

Harty, who received additional evidence (R. 751-891), held another hearing (R. 892-951),

and issued a "decision after remand" in the case on August 31, 2011.  (R. 770-84).

In his decision after remand, ALJ Harty found that Plaintiff has a severe

combination of impairments including both somatoform disorder and conversion disorder.

(R. 776).  Nonetheless, he determined that Plaintiff does not have an impairment or

combination thereof that meets or medically equals the severity of a Listed Impairment,

and that Plaintiff has the residual functional capacity (RFC) for a range of light work

limited by postural, environmental, and mental limitations.  (R. 777-82).  In assessing

RFC, the ALJ recognized that Dr. Moeller's opinion "was the focus of the court's remand

order, which asked that Dr. Moeller be recontacted to determine whether [Plaintiff's

somatoform disorder] related back to the claimant's date last insured, and that the

undersigned should view the evidence through the lens of someone with somatoform

4

disorder." (R. 781). The record contains no evidence that the ALJ recontacted Dr. Moeller. Based upon the RFC assessed, ALJ Harty determined that Plaintiff is unable to perform any past relevant work, but that when also considering her age, education, and work experience there are a significant number of jobs in the economy that Plaintiff can perform. Id. at 782-83. Consequently, he determined that Plaintiff is not disabled within the meaning of the Act, and denied her applications. Id. at 784.

The Appeals Council did not assume jurisdiction of the decision after remand, and therefore that decision is the final decision of the Commissioner. Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004); see also 20 C.F.R. §§ 404.984(a), 416.1484(a) (2011) (after remand, the ALJ's decision becomes the "final decision of the Commissioner after remand . . . unless the Appeals Council assumes jurisdiction of the case").[4] Plaintiff timely filed this case, seeking judicial review of the final decision, which is the subject of this opinion. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

---

[4]The Commissioner's decision in this case was issued on August 31, 2011, and unless otherwise noted, every citation to the Code of Federal Regulations in this opinion refers to the 2011 edition of 20 C.F.R. Parts 400 to 499, Revised as of April 1, 2011.

§ 405(g)); see also, 42 U.S.C. § 1383(c)(3) (SSI decision "shall be subject to judicial review as provided in section 405(g)").  Section 405(g) provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period

6

of at least twelve months.  <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); <u>see also</u>, <u>Knipe v. Heckler</u>, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  <u>accord</u>, <u>Lax</u>, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Williams</u>, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process.  <u>Id.</u>

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims that the ALJ failed to follow the court's remand order to recontact Dr. Moeller or to consider the evidence and the credibility of Plaintiff's allegations in light of the diagnosis of somatoform disorder (Pl. Br. 18-19), and improperly weighed the medical opinions of Dr. Moeller, and of Dr. Johnson, a state agency pediatrician who reviewed the medical evidence in 1998 and provided a physical RFC assessment.  (Pl. Br. 23-25).  In her conclusion, Plaintiff suggests that this case should be remanded for an immediate award of benefits because the record evidence when viewed in light of Plaintiff's somatoform disorder supports a finding of disability, because the Commissioner has failed to apply the correct legal standard during ten years of reviewing this case, has shown a complete misunderstanding of somatoform disorder, and failed to comply with the remand order of this court.  (Pl. Br. 25-26).

The Commissioner argues it was not error for the ALJ to decline to recontact Dr. Moeller because he assumed Dr. Moeller's opinion and diagnosis of somatoform disorder relates back to Plaintiff's date last insured, because the error identified in the remand order was therefore corrected, and because there was no further need to recontact Dr. Moeller.  (Comm'r Br. 7-8).  With regard to the court's instruction to consider the evidence and Plaintiff's credibility in light of the diagnosis of somatoform disorder, the Commissioner argues that the ALJ appropriately followed that instruction.  Id. at 8-10. He argues that the ALJ found somatoform disorder is a severe impairment in this case and that the disorder and its related exaggeration of physical symptoms caused Plaintiff to be distracted at work, that the ALJ found Plaintiff's allegations of symptoms from her somatoform disorder somewhat credible, and that the ALJ gave some weight to Dr. Moeller's opinion regarding Plaintiff's limitations.  Id. at 8.  Finally, the Commissioner argues that the ALJ properly evaluated the medical opinions and properly accorded some weight to Dr. Moeller's opinion regarding mental impairments and accorded substantial weight to Dr. Johnson's opinion regarding physical impairments.  The court finds reversible error in the Commissioner's failure to follow the remand order of the District Court and in the ALJ's consideration of Plaintiff's somatoform disorder and conversion disorder.

## III.    Discussion

Judge Crow's remand order made clear that in the 2008 decision the ALJ erred in finding that Dr. Moeller's opinion related only to the time period of its formulation in

April 2007, and the ALJ misunderstood and misapplied the diagnosis of a somatoform disorder in his evaluation of the record evidence and in his evaluation of the credibility of Plaintiff's allegations.  The court finds that the decision after remand reflects the same errors in considering the diagnoses of somatoform disorder and conversion disorder and once again requires remand in the hope of securing a proper consideration of those issues.

Pursuant to her 1998 SSI application, Plaintiff was referred by the Commissioner for both a physical examination and a psychological examination.  Doctor Younger[5] performed a consultative physical examination on May 21, 1998, and prepared a report of that examination on May 28, 1998.  (R. 221-28) (Ex. A2F).[6]  Despite providing primarily a physical examination, Dr. Younger stated that she also performed a mini-mental status examination.  (R. 222).  In that regard she noted, "however I feel [Plaintiff] was not giving full effort.  She would not attempt any calculations and her attention was poor.

_____

[5]Dr. Younger practices with the firm of Bernard M. Abrams, M.D. & Associates, P.C., and her report was prepared under the letterhead of that firm.  (R. 221).  In the 2008 decision, the ALJ identified Dr. Younger's examination and report as that of Dr. Abrams, the principle of the firm.  (R. 21-22).  The court will refer to this examination and report in every instance as that of Dr. Younger, who signed the report.

[6]The administrative record in this case and the Court Transcript Index and List of Exhibits is disorganized and confusing, and has caused the court difficulty in reviewing the record and in finding documents cited in the decision on remand, and in the parties' briefs.  For example, the List of Exhibits contains two each of lists of exhibits under sections A, B, D, E, and F.  (R. 1-4C).  The court has followed the convention established by ALJ Harty of identifying the first list as "A" exhibits, and the second list as "B" exhibits, i.e., "Ex. A1A," "Ex. B1F."  Moreover, the exhibits appearing on pages 276-381 and 458-657 of the administrative record are not identified in the indices, and in several instances the order in which exhibits are arranged is not sequential.  (R. 4A-4C).

Overall her score was 22 out of 30." In the conclusion to her report, she noted "I think the majority of this patient's problems are psychiatric, possibly a conversion disorder. Although her symptoms sound somewhat like MS, her exam is quite exaggerated and all testing has been normal. I would not consider this patient to be disabled."

A psychological examination was performed by a clinical psychologist, Dr. Holzschuh on June 15, 1998, and his report was undated. (R. 240-41). Dr. Holzschuh noted that Plaintiff discussed several "serious" subjects such as her hospitalization for "multiple sclerosis," her sexual abuse by an uncle, and her second child being stolen by her in-laws, but presented these subjects "in a rather matter-of-fact unconcerned manner." (R. 241). He noted "[t]here are no other indications of loss of reality contact." Id. He provided this "Summary:"

> This 37 year old woman who walks extremely slowly, shuffling her feet forward and side to side evidences no outward signs of psychological disturbance except for a paradoxical outward appearance of friendly serenity. She was very pleasant and intelligent to talk with telling about her pains but revealing no accompanying verbal or facial expressions. Except for an extremely laborious locomotion there were no other signs of dysfunction. As the medical records have yet been unable to identify a definite physical disorder her affective demeanor does suggest a possibility of a conversion disorder. She seems capable of managing her own funds.

(R. 241).

Years later, in April of 2007, Plaintiff was again referred by the Commissioner for a consultative psychological evaluation. (R. 745-50). Dr. Moeller performed the evaluation including MMPI-2 testing and reviewing an unknown portion of the record medical evidence, and he provided a report of that evaluation, dated April 30, 2007. Id.

11

Dr. Moeller noted that Plaintiff said she was disabled by a variety of physical problems including aches and pains in her joints, heavy legs, stomach problems, and "a number of other vague, functional-sounding complaints."  (R. 745).  He noted that Plaintiff's "affect was friendly and unusually upbeat and happy for someone who was complaining of the level of distress she was experiencing."  (R. 747).  He noted that Plaintiff's thought content "appears to be relatively restricted to her physical problems."  Id.

With regard to the MMPI-2 testing, Dr. Moeller noted that Plaintiff's profile showed some concerns regarding validity, but that these were minor and did not preclude interpretation of the testing.  Id.  He found "a prominent conversion-like profile," with the atypical result for such a case that depression was "not elevated above a T-score of 65." Id.  He noted that "Somatic Complaints and Low Positive Emotions were the only scores elevated into the significant range," and that demoralization "was not at all elevated and indeed did not provide any distinguishing characteristics at all for the claimant.  This helps to suggest a conversion-like reaction."  Id.  Dr. Moeller also quoted Dr. Holzschuh's diagnosis of "Conversion Disorder with motor symptoms," and Dr. Younger's statement that "This patient's problems are psychiatric, possibly a Conversion Disorder."  (R. 748).  He provided the following "Summary and Recommendation:

> From the current evaluation, including the MMPI-2 as well as the records reviewed, I believe the claimant is psychologically disabled from gainful employment.  She presents as someone whose history is replete with a number of vague, functional-like symptoms.  While I am not able to state this is truly a Conversion Disorder (there is an absence of any data suggesting a relatively abrupt onset), I am of the opinion she is experiencing a Somatofonn Disorder (NOS).

12

> I believe the psychological nature of this condition is such that she is disabled from any type of gainful employment. Any attempt to engage her in active vocational rehabilitation or simple work behaviors will be met with an increase in reported symptoms.
>
> I believe it is in this lady's best interest to expedite her application if at all possible. I believe she is capable of making her own appropriate financial decisions.

(R. 748). Dr. Moeller assessed a GAF score of 46. Id. He also completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" in which he found that Plaintiff has "Extreme" (defined as "no useful ability to function in this area") limitations in the ability to respond appropriately to work pressure in a usual work setting, and in the ability to respond appropriately to changes in a routine work setting. (R. 750).

At step two of the evaluation process, the ALJ found that Plaintiff has a combination of severe impairments including both somatoform disorder and conversion disorder. (R. 776). This is consistent with the diagnoses and reports of Drs. Younger, Holzschuh, and Moeller, as summarized above.

The ALJ noted that a claimant's ability to perform gainful employment is an issue reserved to the Commissioner, and explained the weight accorded Dr. Moeller's opinion:

> Taken together, the evidence does support Dr. Moeller's somatoform disorder diagnosis. The claimant's work history, feigned effort on examination, and her current mental health diagnosis do not support the conclusion that she is unable to work. The claimant does have some mental health impairment that causes her to assert physical conditions, but the evidence also shows a pattern of deception where the severity of these conditions is concerned. Regardless of the length of time the claimant has suffered from somatoform disorder, the evidence does not support that this is the basis for all of her alleged difficulties. Dr. Moeller's opinion is given some weight in this decision, as his testing does show the claimant has

13

social problems and should be limited to simple, unskilled work.  This is
reflected in the above residual functional capacity.

(R. 782).

The ALJ recognized that the court's remand order required him to recontact Dr.

Moeller, but he did not do so.  Apparently his rationale for failing to do so was his finding

that somatoform disorder is not the basis for all of Plaintiff's alleged difficulties

"[r]egardless of the length of time [she] has suffered from somatoform disorder."  Id.

Although the Commissioner argues that the ALJ assumed that Dr. Moeller's opinion

relates back to the entire period at issue, that is not the case.  The ALJ did not assume the

opinion related back, but determined that even if it did relate back, it did not account for

all of Plaintiff's alleged difficulties.  The ALJ's rationale ignores the fact that the remand

order also directed the Commissioner to seek Dr. Moeller's opinion on the "severity of

the plaintiff's somatoform disorder during the relevant time period."  (R. 812) (emphases

added).

Having failed to secure Dr. Moeller's--or any other psychological expert's--

opinion regarding the severity of Plaintiff's somatoform disorder during the relevant time

period, the ALJ made his decision on remand without the benefit of Dr. Moeller's

opinion, or of any psychologist's opinion regarding the severity of Plaintiff's somatoform

disorder during the entirety of the relevant time period.  This error is based upon and

compounds the error resulting from the failure to grasp the medical significance of and to

adequately consider the effects of somatoform disorder.  In effect, by refusing to

14

recontact Dr. Moeller, the ALJ assumed the prerogative to decide the question of the severity of somatoform disorder in this case himself without the benefit of psychological expertise or assistance, and thereby substituted his lay opinion for the medical opinion of Dr. Moeller.  That the law does not allow.  <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir. 2002).

Both the ALJ's determination that Plaintiff's allegation of symptoms are not credible, and his evaluation of the medical opinions were based in large part on his findings that Plaintiff feigned effort on various examinations, that her symptoms were exaggerated, and that there is no objective medical evidence to support many of her alleged symptoms.  However, the evidence of exaggerated or feigned symptoms in this case is not so prominent or certain as the ALJ suggests, and the primary feature of a somatoform disorder, including conversion disorder, is the presence of <u>physical symptoms</u> that suggest a general medical condition but are not explained by that condition, by substance use or abuse, or by another mental disorder.  Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 485 (4th ed. text revision 2000) (DSM-IV-TR).

Perhaps best illustrative of the problem with the ALJ's approach is his discussion of the evidence relevant to Plaintiff's allegations of a stroke or of multiple sclerosis:

> Claimant also states in November 1999 that she had a cerebrovascular accident five years prior, on or around 1994.  (Exhibit A8F at 4 [(R. 267)]).  However, the same evidence also shows that the claimant was referred to a psychologist when no cause of a cerebrovascular accident was found.  She was observed on examination in May 1997 to be dragging the left leg and

the event was listed as a right sided stroke.  (Exhibit A1F at 7 [(R. 129)]).
She was later found to be dragging the right leg.  (Exhibit A2F at 2 [(R.
222)]).  However, there is no objective medical evidence of such an
occurrence.  Claimant's gait was normal in January 2007.  (Exhibit B6F at
295 [(R. 705)]).[7]  An EMG/NCS study of the claimant in December 2006
was normal for the lower extremities.  (Exhibit B6F at 293 [(R. 707)]).[8]
Finally, claimant alleged in April 2007 that she had a stroke fifteen years
ago, and that she had twelve months of rehabilitation, which is not reflected
in the medical record, nor did she confirm such rehabilitation at hearing.
(Exhibit B6F at 183 [(R. 475)]).[9]  These records demonstrate inconsistent
reporting on behalf of the claimant regarding this incident, along with a lack
of objective confirmation of her symptoms or testimony.  The undersigned
also references the below effort feigning incident.

In addition, the claimant stated at hearing in June 201[1], that she has
multiple sclerosis (MS) from which she still suffers symptoms.  Evidence
shows the claimant admitted that she did not have MS in June 1998.
(Exhibit A7F at 8 [(R. 260)]).[10]  Claimant also stated that doctors had been
unable to substantiate the diagnosis.  (Exhibit A4F at 2 [(R. 241)]).  Yet, in
November 1999 she stated that she had MS, and again at hearing.  At the
examination where she made claims of MS and prior stroke, the claimant
was noted to feign effort to make her leg strength appear weak, show an
abnormal gait and problems with her coordination, which are among the
problems she discloses at hearing.  She also testified that she suffers from
shakiness in her hands and legs, loss of bowel control, speech problems,
memory loss and had to stop her medical treatment for MS because of the

---

[7]This reference appears in the "List of Exhibits" as Exhibit 3F (R. 4A), and using
ALJ Harty's numbering convention should be Ex. B3F at 295.  This and the next two
footnotes once again illustrate the problems with the Commissioner's indexing of the
administrative record in this case.

[8]This reference appears in the "List of Exhibits" as Exhibit 3F (R. 4A), and using
ALJ Harty's numbering convention should be Ex. B3F at 293.

[9]This reference appears among the exhibits that are not listed in the indices to the
administrative record.  Exhibit B6F is in the "List of Exhibits," but that is Dr. Moeller's
report.  Compare (R. 4B), with (R. 745-50).

[10]The correct citation should be Ex. A7F at 5.  "Ex. A7F at 8" appears at page 263
of the record and says nothing regarding MS.

side effects.  She added in her testimony that her MS symptoms are triggered by summer heat.  MRI's were found to be normal.  (Exhibit A1F at 22 [(R. 145)]).  There is no objective support for the diagnosis of MS in the medical record or that she ever received treatment for the disorder after a diagnosis by a physician.

(R. 776-77).

In making his credibility analysis, the ALJ again pointed out that Plaintiff's report of pain in her lower extremities "seems to have moved from one side to the other," that Plaintiff "has shown poor effort" and "has feigned effort," and that the record reveals "inconsistent reports of gait and station," and at times has shown normal gait.  (R. 780).  He continued his analysis:

> Claimant is not on a pain management regimen, has not been treated for her alleged MS in years, but does have some history of being given pain medication for her ailments.  She continues to allege physical impairments that are not supported in the medical record, despite her access to medical care prior to her separation from her military spouse.  She testified that this was because medical providers keep telling her the same thing.  What the evidence shows is that, in many cases, they keep telling her that there is no diagnostic evidence to support her claims and that she has been guilty of malingering and inconsistent reporting.

(R. 780).

While the ALJ's summary of the record is generally correct, it ignores that much of what is present in the evidence here is precisely what one would expect when one is confronted with the medical records of an individual with a somatoform disorder.  Examples of symptoms which are reported at various points in the administrative record here, and are also common symptoms in various somatoform disorders include nausea, abdominal bloating, impaired coordination or balance, paralysis, localized weakness,

17

difficulty swallowing, aphonia, and loss of touch, or pain sensation.  DSM-IV-TR at 486,

493.  The Diagnostic and Statistical Manual of Mental Disorders (DSM) also notes that

such persons "typically are inconsistent historians;" id. at 491; that the "more medically

naive the person, the more implausible are the presenting symptoms."  Id. at 493.  It is

noted that "[c]onversion symptoms are often inconsistent.  A 'paralyzed' extremity will

be moved inadvertently while dressing or when attention is directed elsewhere."  Id.

Finally, Dr. Holzschuh's report leads the court to note that the DSM recognizes that

"[i]ndividuals with conversion symptoms may show la belle indifference (i.e., a relative

lack of concern about the nature or implications of symptoms) or may also present in a

dramatic or histrionic fashion.  Because these individuals are often suggestible, their

symptoms may be modified or resolved based on external cues."  Id. at 495.

It must be remembered that "[t]he common feature of the Somatoform Disorders is

the presence of physical symptoms that suggest a general medical condition . . . and are

not fully explained by a general medical condition, by the direct effects of a substance, or

by another mental disorder."  DSM-IV-TR, at 485 (emphasis added).  A primary

difference between a Somatoform Disorder and Factitous Disorders or Malingering is that

in a Somatoform Disorder the physical symptoms are not intentional, or under voluntary

control.  Id.  Thus, the fact that the objective medical evidence does not confirm the

physical symptoms does more to suggest that there is a somatoform disorder than it does

to suggest that Plaintiff is not credible or that she is feigning or malingering.  Parks v.

Sullivan, 766 F. Supp 627, 636 (N. D. Ill. 1991).

The ALJ in this case found that Plaintiff has both somatoform disorder and conversion disorder which are severe within the meaning of the Act.  (R. 776).  This record could support no other finding.  Therefore, when considering the credibility of Plaintiff's allegations and the severity of the disorders, the ALJ must bear in mind the presence of a somatoform disorder.  It is mostly irrelevant that the objective medical evidence does not support Plaintiff's symptoms.  The real question is whether the symptoms, or the severity or intensity of the symptoms presented or alleged are intentional or under voluntary control.  If so, there may also be the presence of a Factitious Disorder or Malingering.

Evidence that the symptoms or their intensity are feigned or that Plaintiff is malingering, on the other hand, is evidence that they or their alleged intensity is intentional or under voluntary control.  When one ignores the ALJ's reliance on medical evidence which does not support the symptoms alleged--as one must in these circumstances--the ALJ found evidence of malingering or of feigning effort only three places in a 950-page record.  The first is in Dr. Younger's May, 1998 report in which she felt that Plaintiff was not giving full effort to a mini-mental status examination because she would not attempt calculations and her attention was poor.  (R. 222).  Dr. Younger noted that Plaintiff's symptoms "sound somewhat like MS, [but] her exam is quite exaggerated and all testing has been normal."  Id.  Nonetheless, Dr. Younger thought "the majority of this patient's problems are psychiatric, possibly a conversion disorder."  Id.  Here, the evidence of feigning or malingering is equivocal.  Dr. Younger did not find that

19

Plaintiff was malingering or that she was in voluntary control of the symptoms presented. In fact, she suggested that the symptoms were mostly psychiatric.  Moreover, she did not suggest whether the "quite exaggerated" MS symptoms were a result of medical consideration of those symptoms when compared to the usual presentation of MS or were the result of <u>Plaintiff's</u> exaggeration.  Finally, Dr. Younger is a medical doctor, not a psychologist, and while she works in the office of a neurologist, her specialty is not given. The office letterhead suggests that Dr. Adams specializes in neurology, Dr. Reiss in electroencephalography, and Dr. Belson in electromyography, but it suggests no specialty for Dr. Younger.  (R. 221).  It cannot be determined directly from this evidence that Plaintiff is feigning symptoms or is malingering.

The ALJ also referred to a November 2, 1999 Neurology Clinic treatment record from the Truman Medical Center and found that Plaintiff was "noted to feign effort to make her leg strength appear weak, show an abnormal gait and problems with her coordination." (R. 777).  The treatment note is not so certain as the ALJ suggests.  In the "Examination" section of that note, the motor examination revealed "effort -dependent weakness throughout," and "no reliable effort."  (R. 269).  Coordination revealed "feigned effort, unreliable;" and gait exam revealed "exaggerated/nonphysiologic tremor - walk." <u>Id.</u>  The note shows that a review of "outside records" showed "no objective evidence of Multiple Sclerosis or stroke," and "signs on exam are not reliable except absent patellar reflex."  Once again, the ALJ inferred that the problem was a voluntary presentation by Plaintiff, but the evidence does not compel that conclusion.  Even where

20

the note records "feigned effort" at coordination, it does not state that this was voluntary and does not state that Plaintiff was malingering.  In fact, the recommendation from the note was to "Obtain outside films for review," and to perform "EMG/NCV [testing] of RLE for possible radiculopathy."  Id.

The final direct record evidence of potential malingering appears in the opinion of the state agency psychologist, Dr. Isenberg, who reviewed the record evidence on June 17, 1998.  The ALJ discussed his reliance on Dr. Isenberg's opinion:  "He noted that the claimant's conversion disorder symptoms were recorded as exaggerated by examining psychologists, but that otherwise her mental health testing showed her within normal limits.  These statements are supported by Plaintiff's pattern of behavior and help explain why the claimant is not as functionally limited by her impairments as she claims."  (R. 782).  He accorded "substantial weight" to Dr. Isenberg's opinion.  Id.  Again, Dr. Isenberg's opinion is not as certain as the ALJ implied, and does not compel his inference.

In making a mental residual functional capacity assessment, Dr. Isenberg found Plaintiff was only "moderately limited," and in only one of 20 mental abilities--the ability to carry out detailed instructions.  (R. 252-54).  He acknowledged that Plaintiff was diagnosed with conversion disorder but he stated no opinion regarding physical limitations or regarding the severity of the physical symptoms alleged by Plaintiff.  He explained his mental functional capacity assessment:

>Claimant is diagnosed as Conversion Disorder with Motor Symptoms.
>Other than this her mental status was WNL [(within normal limits)].
>Appearance was neat & clean.  She was relaxed & friendly.  Mood was
>"upbeat."  Good intellect, attention, conc[entration?] insight & judgment.
>She attends church a few times a week, cleans, reads, drives, & shops.  Her
>conversion symptoms (which were described as "exaggerated" by the
>neuro. CE [(consultative examination)]) of weakness, numbness, might
>hinder her in certain demanding settings.

(R. 254).

Contrary to the ALJ's finding, Dr. Isenberg noted that Plaintiff's symptoms were

recorded as exaggerated by an examining medical doctor ("by the neuro. CE") not by

"examining psychologists."  This is significant because the record actually contains no

opinion by any psychologist or other mental health specialist that Plaintiff is feigning

symptoms, exaggerating, or malingering.  While the psychologist, Dr. Isenberg, noted in a

parenthetical that Dr. Younger described the symptoms as exaggerated (and apparently

discounted their weight accordingly), he did not opine that Plaintiff was feigning,

exaggerating, or malingering.  However, the record does contain the opinion of Dr.

Moeller, a psychologist who had the benefit of psychological testing, of personal

examination, and of reviewing at least a portion of the medical evidence from before his

examination in April, 2007, including Dr. Younger's report of exaggerated symptoms,

and potentially the 1999 Neurology Clinic treatment notes.  And, Dr. Moeller opined that

Plaintiff has no useful ability to respond appropriately to work pressure or to respond

appropriately to changes in a routine work setting (R. 750), that "[a]ny attempt to engage

[Plaintiff] in active vocational rehabilitation or simple work behaviors will be met with an

increase in reported symptoms," and that she "is psychologically disabled from gainful employment." (R. 748).

The court is mindful that its duty is not to reweigh the evidence, and that it may not substitute its judgment for that of the Commissioner. It has not provided the preceding discussion for the purpose of suggesting a different conclusion that the ALJ should have reached. Rather the purpose of the court's discussion is to show that the ALJ did not review the evidence and Plaintiff's credibility while being properly mindful of the diagnosis of somatoform disorder, and to show the error in the ALJ's failure to recontact Dr. Moeller to request his opinion regarding both the onset of Plaintiff's somatoform disorder <u>and</u> the severity of that disorder during the relevant time period.

The court believes it is also necessary to address the ALJ's statement that "[w]hat the evidence shows is that, in many cases, [the medical providers] keep telling [Plaintiff] that there is no diagnostic evidence to support her claims and that she has been guilty of malingering and inconsistent reporting." (R. 780). The court notes that the ALJ provided no citation to the record evidence in support of this statement. While it is true that there is no diagnostic evidence to support many of the symptoms alleged by Plaintiff (although it might be argued that the MMPI-2 test results are diagnostic evidence supporting physical symptoms produced by somatoform disorders), and while there is evidence in the record which might support finding that Plaintiff has made inconsistent reporting, the court finds no record evidence that any health care provider <u>told Plaintiff</u> that she made

inconsistent reports or that she was malingering.  This statement appears to be hyperbole unsupported by record evidence.

On remand the Commissioner must recontact Dr. Moeller, secure updated testing and examination from Dr. Moeller, provide <u>all</u> of the medical evidence (including his report dated April 30, 2007) to Dr. Moeller for his review, and ask for a detailed report providing his opinion regarding the onset, duration, and persistence of Plaintiff's somatoform disorder(s) since at least 1998, providing citation to the medical evidence which supports his opinions, and providing rationale for the conclusions reached.  If Dr. Moeller is unavailable or unable to perform the duties described, the Commissioner must demonstrate on the record the reasons for Dr. Moeller's unavailability or inability, and then must designate another psychologist to perform a consultative examination meeting all of the criteria listed above for Dr. Moeller's examination.  As always, the Commissioner may find it useful to secure the services of a medical adviser in addition to, but not instead of, the consultative examination required herein.  Then, the Commissioner must decide whether Plaintiff has been or is disabled within the meaning of the Act at any time on or after her alleged onset date of disability, April 1, 2001.  In deciding the issue of disability, the Commissioner must review the evidence and Plaintiff's credibility while being properly mindful of the diagnosis of a somatoform disorder in accordance with the principles discussed herein.

Finally, the court considers Plaintiff's suggestion that the court should remand for an immediate award of benefits.  Whether to remand the case for additional fact-finding

or for an immediate calculation and award of benefits is within the discretion of the district court.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)).  In 2006, the Tenth Circuit noted two factors relevant to whether to remand for an immediate award of benefits:  Length of time the matter has been pending and "whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'"  Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006)(quoting Harris v. Sec'y of Health & Human Servs., 821 F.2d 541, 545 (10th Cir. 1987); and citing Sisco v. Dep't of Health & Human Servs., 10 F.3d 739, 746 (10th Cir. 1993)).

The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).  Nevertheless, the Commissioner is not entitled to adjudicate a case ad infinitum until he correctly applies the proper legal standard and gathers evidence to support his conclusion.  Sisco, 10 F.3d at 746.

Plaintiff made her renewed applications in this matter ten years ago.  (R. 846).  Therefore the length of time this matter has been pending weighs heavily in favor of a remand for immediate award of benefits.  However, as is evident from the court's discussion of the record evidence and of the Commissioner's decision, there is some

25

evidence in the record which might support a finding that Plaintiff's symptoms are not as severe as alleged, but the ALJ failed to properly evaluate that evidence.  Moreover, were the court to remand for an award of benefits, there remains a question regarding the onset date of disability.  That is an issue related to Judge Crow's remand in the earlier case. Were the court to apply Plaintiff's alleged date of onset, April 1, 2001, it would be assuming without further fact-finding that the impairment was disabling during the entire time period.  Were the court to apply the date of Dr. Moeller's diagnosis, April, 2007, it would be negating the very fact for which Judge Crow determined further fact-finding was necessary--whether Dr. Moeller's opinion related back to an earlier period. Therefore, remand for additional fact-finding would serve the useful purposes of securing the necessary additional psychological opinion evidence regarding the record medical evidence, and of properly evaluating all of the record evidence.  Being mindful of the fact that the Commissioner is not entitled to adjudicate a case ad infinitum until he correctly applies the proper legal standard and gathers evidence to support his conclusion, the court nonetheless reluctantly finds that remand for further fact-finding with certain appropriate stipulations and limitations is the proper course to take in these circumstances.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings as detailed in this opinion.

**IT IS FURTHER ORDERED** that the Commissioner shall recontact Dr. Moeller, secure updated psychological testing and examination from Dr. Moeller, provide <u>all</u> of the medical evidence (including Dr. Moeller's report dated April 30, 2007) to Dr. Moeller for his review, and ask for another detailed report providing Dr. Moeller's medical opinions regarding the onset, duration, and persistence of Plaintiff's somatoform disorder(s) since at least 1998,[11] providing citation to the record medical evidence which supports his opinions, and providing rationale for the conclusions reached.  If Dr. Moeller is unavailable or unable to perform the duties described, the Commissioner shall demonstrate on the record the reasons for Dr. Moeller's unavailability or inability, and shall designate another psychologist to perform a consultative examination and provide a report meeting all of the criteria listed above for Dr. Moeller's examination and report.

**IT IS FURTHER ORDERED** that the Commissioner shall decide whether Plaintiff has been or is disabled within the meaning of the Act at any time on or after her alleged onset date of disability, April 1, 2001, and shall review the evidence and Plaintiff's credibility while being properly mindful of the diagnosis of a somatoform disorder in accordance with the principles discussed above.

---

[11]The court is aware that application of the doctrine of administrative <u>res judicata</u> prevents finding disability before January 29, 2000.  <u>See</u>, footnote 2, above.

Dated this 2nd day of January 2013, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**